RECEIVED

JUL 2 8 2005

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| MACK TEZENO | CIVIL ACTION NO. 04-1749-LO |
| VS. | SECTION P |
| N. BURL CAIN, WARDEN | MAGISTRATE JUDGE HILL<br>BY CONSENT |

## REASONS FOR JUDGMENT

Before the Court is a petition for writ of *habeas corpus* filed on August 19, 2004

by *pro se* petitioner, Mack Tezeno, pursuant to 28 U.S.C. §2254. Petitioner is currently

confined at the Louisiana State Penitentiary in Angola, Louisiana serving a life sentence

for second degree murder. The parties have consented to the undersigned exercising the

court's jurisdiction pursuant to 28 U.S.C. 636 and Rule 73, FRCP. [rec. doc. 19].

## PROCEDURAL HISTORY

On August 24, 1999 petitioner was convicted of second degree murder in the 27th

Judicial District Court.  On November 5, 1999, petitioner was sentenced to life

imprisonment.

 Petitioner directly appealed his conviction and sentence to the Louisiana Third

Circuit Court of Appeals asserting seven assignments of error, one of which was that the

trial court erroneously denied petitioner's *Batson*[1] challenge to the State's use of eight of

---

[1] *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

its nine peremptory challenges on African American members of the jury venire. [rec. pg. 1200].

On June 7, 2000 petitioner's conviction and sentence were affirmed by the Third Circuit Court of Appeals. [rec. pgs. 1004-1021, 1080, *State v. Tezeno*, 99-1886, 771 So.2d 324 (La. App. 3d Cir. 6/7/2000), rehearing denied, (La. App. 3d Cir. 9/13/2000)]. The Third Circuit did not consider petitioner's *Batson* claim because trial counsel failed to comply with the procedural prerequisites for asserting such a challenge.[2] [rec. pg. 1008, 1013]. Petitioner sought review in the Louisiana Supreme Court where he re-urged his claim that the trial court erroneously denied his *Batson* challenge. [rec. pg. 1160-1165]. The Louisiana Supreme Court denied writs without comment on May 25, 2001. [rec. pg. 1087, *State v. Tezeno*, 2000-1849, 792 So.2d 751 (La. 5/25/2001)]. The United States Supreme Court denied petitioner's request for writ of *certiorari* without comment on October 29, 2001. *Tezeno v. Louisiana*, 534 U.S. 1000, 122 S.Ct. 474, 151 L.Ed.2d 388 (2001).

---

[2]The Third Circuit found in pertinent part as follows:
> ...The Defendant did not properly present this claim in the trial court and thus did not preserve the matter for review on appeal.

> ...There is not only an issue of timeliness of the initial objection, it having been raised after the jury was sworn, but also there is an issue of the refusal, and not simply the failure of trial counsel to present his *prima facie* case of discriminatory use of peremptory challenges by the State. ...

> ...we will not consider this claim based upon trial counsel's refusal to comply with the procedures of *Batson* and the requirement of La. Code Crim. P. art. 841.

Thereafter, petitioner filed an Application for Post-Conviction Relief in the 27th Judicial District Court. Petitioner alleged several ineffective assistance of trial counsel claims, including a claim that counsel failed to make a timely, contemporaneous objection to the trial court's ruling which denied petitioner's *Batson* challenge and failed to establish a *prima facie* case of discrimination in the State's exercise of peremptory challenges. [rec. pg. 965, 972-977]. The application was denied by the trial court on July 31, 2002. [rec. pg. 957-958].

Petitioner sought review in the Third Circuit Court of Appeals. Review of the brief filed by petitioner in that court reveals that petitioner presented two claims for relief: (1) "The trial court erred in post conviction proceedings when denying relief on counsel's failure to file appropriate motions attacking the court's jury instruction in regards to Kevin Goodley's testimony" and (2) "The trial court again abused his discretion when he failed to have the State provide racial-neutral reasons for exclusion of African-Americans from the jury, after trial counsel raised a *Batson* objection." [rec. pg. 1280-1281]. Within his second claim, petitioner a suggested that his counsel was ineffective when he failed to timely and properly raise the *Batson* issue. [rec. pg. 1281-1283]. Petitioner presented no argument with respect to his first claim for relief.

On May 21, 2003, the Third Circuit denied writs finding as follows:

> Relator failed to prove that trial counsel was ineffective in failing to make a timely objection to the trial court's ruling denying his *Batson* claim. Inasmuch as Relator did not brief the issues of whether counsel was ineffective for failing to

> request the trial court to instruct the jury regarding the
> testimony of his accomplice and whether counsel was
> ineffective for failing to object to the trial court's ruling on
> his motion for new trial, these issues were abandoned.
> Uniform Rules, Courts of Appeal, Rule 12-2.4. [rec. pg. 980,
> *State v. Tezeno*, KH 02-01061 (La. App. 3d Cir. 5/21/2003)].

Petitioner filed an application for writs in the Louisiana Supreme Court. In his

application, petitioner re-urged his substantive *Batson* claim. He listed the following in

the section entitled "Questions Presented": "Whether or not the lower courts adjudication

of Petitioner's *Batson* claim is contrary to or amounts to an unreasonable application of

the precedents previously announced in *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct.

1859, 114 L.Ed.2d 395 (1991); *Purkett v. Elm*, 514 U.S. 765, 768, 115 S.Ct. 1769, 131

L.Ed.2d 834 (1995)?" [rec. pg. 1255]. In the section entitled "Reasons for Granting the

Writ" petitioner argued extensively that the trial court erred in denying petitioner's *Batson*

challenge despite his presentation of a *prima facie* showing of purposeful discrimination

in accordance with the United States Supreme Court precedent in *Hernandez, Purkett* and

*Miller-El v. Cockrell*, 123 S.Ct. 1029 (2003) analogizing his case to those cases. [rec. pg.

1263-1265]. In the section entitled "Law and Arguments" petitioner listed as "Claim

Number I" the following: "The trial judge abused his discretion when he failed to have

the State provide race-neutral reasons for exclusion of African Americans from the jury,

after trial counsel raised a *Batson* objection." [rec. pg. 1268]. Petitioner's argument is not

a model of clarity; the majority of petitioner's allegations constitute no more than a

procedural history of the challenge presented in the lower courts, and contains no citation

whatsoever to controlling precedent required by *Strickland v. Washington*, 466 U.S. 668 (1984). [rec. pg. 1268-1271]. In the "Conclusion" section of the writ application, petitioner suggested that his counsel was ineffective with respect to the *Batson* issue, adopted his pleadings in the lower courts and incorporated the arguments presented therein by reference, and requested that the court remand the matter to the trial court for an evidentiary hearing on the merits of his post-conviction ineffective assistance claims. [rec. pg. 1272-1273]. On June 18, 2004, the Louisiana Supreme Court denied petitioner's writ application without comment. [rec. pg. 1309, *State ex rel. Mack Gallow, Tezeno v. State*, 2003-1706 (La. 6/18/2004)].

On August 19, 2004, petitioner filed the instant *habeas* petition alleging the following claims for relief: (1) Prosecution used its peremptory challenges to strike Afro-Americans from the jury venire in violation of Petitioner's Equal Protection rights to have a jury panel selected pursuant to non-discriminatory criteria; (2) Trial counsel rendered ineffective assistance of counsel, thus, violating Petitioner's Sixth and Fourteenth Amendment rights to the effective assistance of counsel, when counsel raised a *Batson* challenge untimely; (3) Trial counsel rendered ineffective assistance of counsel, thus violating Petitioner's Sixth and Fourteenth Amendment rights to the effective assistance of counsel, when counsel failed to make appropriate motions for the trial court to instruct the jury on alleged accomplice testimony; and (4) Prosecution used perjured testimony in order to obtain a conviction against Petitioner.

Petitioner's Motion for Voluntary Dismissal of his fourth claim for relief, that the prosecution used perjured testimony to obtain his conviction, has been granted. [rec. docs. 6 and 7]. Additionally, by separate Partial Judgement, petitioner's first and third claims for relief, that the prosecution used its peremptory challenges to strike Afro-Americans from the jury venire in violation of Petitioner's Equal Protection rights to have a jury panel selected pursuant to non-discriminatory criteria and that trial counsel rendered ineffective assistance by failing to make appropriate motions for the trial court to instruct the jury on alleged accomplice testimony, respectively, were denied and dismissed with prejudice because these claims were barred by the "traditional" procedural default doctrine. [rec. docs. 9 and 10]. Accordingly, these claims are no longer before this court for review. The sole claim which remains pending is petitioner's claim that his counsel was ineffective for failing to timely raise and perfect his *Batson* challenge.[3] Although the undersigned was concerned that this claim had not been fully exhausted in the state courts and that the claim was therefore "technically" procedurally barred, the undersigned took no *sua sponte* action. Rather, the undersigned directed the State to raise the issue, if applicable, by response to the instant petition. [rec. doc. 11].

The State has filed an Answer and Memorandum in Opposition to federal *habeas corpus* relief in which the State asserts that petitioner's sole remaining claim for relief, that his trial counsel was ineffective for failing to timely and properly raise a *Batson*

---

[3] The undersigned initially interpreted petitioner's Motion for Voluntary Dismissal as requesting voluntary dismissal of that claim also. By separate Order, that portion of the court's dismissal was vacated. [rec. doc. 8].

challenge, has not been properly exhausted in the Louisiana state courts and accordingly is procedurally barred. [rec. doc. 16]. Petitioner has not filed a reply.

## LAW AND ANALYSIS

**Exhaustion/Procedural Default**

In light of the above procedural history and for the reasons set forth below, the court finds that the State's position is well taken. Petitioner's claim that his counsel was ineffective for failing to timely and properly raise a *Batson* challenge has not been fully exhausted in the Louisiana state courts and that the claim is therefore "technically" procedurally barred.

It is well settled that a petitioner seeking federal *habeas corpus* relief cannot collaterally attack his state court conviction in federal court until he has exhausted available state remedies. 28 U.S.C. §2254(b)(1)(A); *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Minor v. Lucas*, 697 F.2d 697 (5th Cir. 1983); *Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir. 1999); *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir.1999); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir.1998). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his claim to the state courts in order to allow the state courts the initial opportunity to correct federal constitutional violations. *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001); *Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347, 1349 (2004). Moreover, each claim must be presented to the state's highest court, even when review by

that court is discretionary. *O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728 (1999); *Magouirk v. Phillips,* 144 F.3d 348, 360 (5th Cir. 1998), citing *Richardson v. Procunier,* 762 F.2d 429, 431-32 (5th Cir. 1985); *Baldwin,* 124 S.Ct. at 1350. In Louisiana, the highest court is the Louisiana Supreme Court.

Petitioner did not properly or fairly present his ineffective assistance claim to the Louisiana Supreme Court on either direct or collateral review. On direct review in the Louisiana Supreme Court, petitioner presented a substantive *Batson* claim arguing trial court error as opposed to ineffective assistance of counsel. [rec. pg. 1160-1165]. In collateral proceedings in the Louisiana Supreme Court, it appears that petitioner again raised a substantive *Batson* claim, rather than an ineffective assistance of counsel claim. Neither the "Question Presented" for review nor the "Claim" identified in petitioner's writ application lists ineffective assistance of counsel. [rec. pg. 1255, 1268]. Rather, petitioner merely made a passing reference to counsel's alleged ineffectiveness in the "Conclusion" section of his writ application to that court. [tr. pg. 1272]. However, vague or fleeting references tacked on to the end of another argument in a state court brief does not sufficiently afford the state court the opportunity to address an alleged violation of federal rights and, hence, does not constitute a "fair presentation" for exhaustion purposes. *Wilder,* 274 F.3d at 260. Additionally, although petitioner attempts to adopt and incorporate the arguments contained in his briefs presented to the lower courts, the United States Supreme Court has held that "a state prisoner does not 'fairly present' a

claim to a state court if that court must read beyond a petition or brief...that does not alert it to the presence of a federal claim in order to find material...that does so." *Baldwin,* 124 S.Ct. at 1351. That requirement is particularly appropriate in this case since petitioner complained to the Third Circuit that his trial counsel was ineffective for failing to object to the court's jury instruction regarding Kevin Goodley. See p. 3 *infra.* Thus, the undersigned concludes that the Louisiana Supreme Court was denied a fair opportunity to consider petitioner's claim that his counsel was ineffective for failing to timely and properly raise a *Batson* challenge. Accordingly, petitioner's claim remains unexhausted.

When a petitioner fails to timely present his claims to the Louisiana Supreme Court and is time-barred from seeking further relief in the Louisiana courts because he has allowed his state court remedies to lapse, those claims are "technically exhausted." *Wilder,* 274 F.3d at 262 citing *Finley v. Johnson,* 243 F.3d 215, 220 (5th Cir.2001); *Magouirk,* 44 F.3d at 357 citing *Coleman,* 501 U.S. at 731-33, and 735 at fn. 1, 111 S.Ct. at 2546; *Bledsue v. Johnson,* 188 F.3d 250, 254-55 (5th Cir. 1999) citing *Coleman v. Thompson,* 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546 (1986) and *O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728 (1999); *Sones v. Hargett,* 61 F.3d 410,416 (5th Cir.1995); *Fuller v. Johnson,* 158 F.3d 903, 905-06 (5th Cir. 1998). In such a case there is no difference between non-exhaustion and procedural default. *Id.* Accordingly, when a petitioner fails to exhaust state court remedies because he has allowed his claims to lapse, those claims are "technically" procedurally defaulted. *Id.*

9

In the instant case, the state court to which petitioner would be required to return to meet the exhaustion requirement would now find the claim untimely.[4] Hence, for purposes of federal *habeas corpus* review, the claim is "technically" procedurally defaulted. This court may therefore refuse to review petitioner's claim unless petitioner demonstrates that he should be excused from application of the procedural default doctrine by showing cause and prejudice for the default or that a miscarriage of justice will result from the denial of federal *habeas* review. See *Finley*, 243 F.3d at 220-221; *Coleman, supra; McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454 (1991); *Moore v. Roberts*, 83 F.3d 699 (5th Cir. 1996); *Gray v. Netherland*, 518 U.S. 152, 116 S.Ct. 2074 (1996); *Sones*, 61 F.3d at 416.

### *Cause and prejudice*

The Supreme Court has defined what constitutes cause such as to allow review by this court where a claim has been procedurally defaulted. In *Murray v. Carrier*, the Supreme Court explained that cause requires an impediment external to the defense:

> [W]e think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable, would constitute cause under this standard.

---

[4]See La.C.C.Cr.P. art. 930.8.

*Id.* at 488, 106 S.Ct. at 2645 (internal citations omitted). If a petitioner fails to demonstrate cause, the court need not consider whether there is actual prejudice. *Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir. 1992).

Petitioner was placed on notice by the court that the procedural default doctrine might be applicable to the instant claim and was given an opportunity to present valid reasons why his claim was not subject to the procedural default doctrine, and more specifically, an opportunity to demonstrate both "cause" for his default and "prejudice". [rec. doc. 5]. However, petitioner failed to submit any response to this court. Moreover, petitioner was placed on notice that the procedural default doctrine might bar his claim by virtue of the State's Answer to the instant petition and Memorandum in Opposition to *habeas corpus* relief. [rec. doc. 16]. Petitioner has failed to file any reply to the State's arguments. Thus, the court finds that Tezeno has failed to demonstrate cause for his default.

The court is not required to examine the prejudice prong if petitioner has failed to demonstrate cause. *Saahir*, 956 F.2d at 118. Accordingly, the undersigned will not undertake an examination of prejudice. Petitioner's procedural default cannot be excused.

### *Miscarriage of Justice*

In order for a *habeas corpus* petitioner to avoid a procedural default by showing a fundamental miscarriage of justice, the petitioner must assert his actual innocence by

11

showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2649; 91 L.Ed.2d 397 (1986); *Glover*, 128 F.3d at 904. To support such an exception, the petitioner must allege that as a factual matter he did not commit the crime of which he was convicted. *Corwin v. Johnson*, 150 F.3d 467, 473 (5th Cir. 1998); *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995). Thus, the petitioner must make a "colorable showing of factual innocence." *Callins v. Johnson*, 89 F.3d 210, 213 (5th Cir.), *cert. denied*, 519 U.S. 1017, 117 S.Ct. 530, 136 L.Ed.2d 416 (1996), quoting *McClesky v. Zant*, 499 U.S. 467, 495, 114 S.Ct. 1454, 1471, 113 L.Ed.2d 517 (1993). Petitioner has not shown as a factual matter that he is actually innocent of the crime of which he was convicted, and thus he will not suffer a fundamental miscarriage of justice from this court's failure to consider his claim. Accordingly, petitioner cannot avoid procedural default on grounds of actual innocence.

For the foregoing reasons, petitioner's claim that his counsel was ineffective for failing to timely and properly raise a *Batson* challenge is subject to dismissal with prejudice because the claim is barred by the doctrine of procedural default.

## Merits/ Ineffective Assistance of Counsel

Although petitioner's claim must be dismissed because it is procedurally defaulted, the court will nevertheless review the claim on the merits. To prevail on an ineffective assistance of counsel claim, a petitioner must establish that (1) his attorney's

representation fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984). The burden is on the petitioner to show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688. The court's scrutiny is "highly deferential" and the court must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689-90. See also *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir. 1985). Moreover, counsel does not fall below the level of objective reasonableness for failing to make a frivolous objection or futile motion. See *United States v. Preston*, 209 F.3d 783, 785 (5th Cir. 2000) citing *Green*, 160 F.3d at 1037 ("[F]ailure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness...."); *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) citing *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir.1990) ("This Court has made clear that counsel is not required to make futile motions or objections.").

    *Strickland's* prejudice element requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[5] A reasonable probability is a probability sufficient to

---

[5] The *Strickland* court outlined the extent of prejudice that must be established by the defendant:
    An error by counsel, even if professionally unreasonable, does not warrant
    setting aside the judgment of the criminal proceeding if the error had no effect
    on the judgment. *Cf. United States .v Morrison*, 449 U.S. 361, 364-65 (1981).

undermine confidence in the outcome." *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001) citing *Strickland*, 104 S.Ct. at 2068. A petitioner must affirmatively prove prejudice. *Deville v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995); *Earhart v. Johnson*, 132 F.3d 1062,1066 (5th Cir. 1998). Self serving conclusory statements that the outcome would have been different "fall far short of satisfying *Strickland's* prejudice element." *Sayre*, 238 F.3d at 635. Moreover, allegations of a mere possibility of a different outcome are insufficient to establish prejudice. *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999).

Because both *Strickland* factors, that of deficient performance and prejudice, must be satisfied, "an ineffective assistance contention may be rejected on an insufficient showing of prejudice, without inquiry into the adequacy of counsel's performance." *Strickland*, 466 U.S. at 689-94. Petitioner must satisfy both prongs of *Strickland*, demonstrating both that counsel's performance was deficient and that the deficiency prejudiced the defense. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999); *Green v. Johnson*, 160 F.3d 1029, 1035-36 (5th Cir. 1998). However, "[m]ere conclusory

---

Defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability exists if the probability is sufficient to undermine confidence in the outcome.

When a defendant challenges a conviction , the question is whether there is reasonable probability that absent the errors the fact-finder would have a reasonable doubt respecting guilt.

*Strickland, supra,* at pages 691-692.

allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green,* 160 F.3d at 1043.

The trial court and Louisiana Third Circuit Court of Appeals found petitioner's claim without merit because petitioner had failed to prove that trial counsel was ineffective. [rec. pg. 958, 980]. Considering the entire record in this case, the undersigned cannot find that determination is contrary to, or an unreasonable application of, federal law, nor is that determination an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. §2254(d)(1) and (2). Because petitioner's claim of discrimination in the State's use of peremptory strikes is without merit, petitioner's claim for ineffective assistance of counsel is likewise without merit as counsel is not constitutionally required to make frivolous objections or assert futile motions. Accordingly, under the applicable standard of review, federal *habeas* relief is not warranted for the following reasons.

Because petitioner's ineffective assistance claim rests on an alleged *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712 (1986) violation, in order to determine if petitioner was prejudiced by counsel's alleged failure, the court must make a preliminary, though not definitive, consideration of the three-step framework mandated by *Batson,* and reaffirmed by the Supreme Court's later cases, as regards the trial jurors in this case.

The record reveals that jury selection in the present case occurred on August 10, 1999. Review of the transcript of the *voir dire* proceedings reveals that in selecting 12

jurors and 1 alternate juror, two panels of 13 and one panel of 14 prospective jurors were exhausted, for a total of 40 prospective jurors. [rec. pg. 305-306]. However, the record contains information as to the race of some, but not all, of the 40 prospective jurors on the panels. The record further reveals that of the twelve persons selected to serve on petitioner's jury, eleven members were white and one member was black.[6] [rec. pg. 444, 445, 203, 1032]. Each side was permitted a total of twelve peremptory challenges. [rec. pg. 15]. Defense counsel used all twelve peremptory challenges to excuse nine white and three black potential jurors. The State used nine of its twelve peremptory challenges to excuse one white and eight black potential jurors. Although the State had accepted a total of four black jurors for service on petitioner's jury, three of these four persons were excused on peremptory challenges exercised by defense counsel.[7]

After the jury had been selected, defense counsel objected to the make-up of the petit jury because only one black person had been selected, purportedly because the "State ha[d] elected to exclude every black person except one." [rec. pg. 444]. The State responded that counsel's statement was not accurate because the State had accepted three other blacks, namely, Sandra Anderson, Herman LaFontaine and Angela Greene, but that

---

[6]Although petitioner argues herein that there were no black jurors on his petit jury, that claim is belied by the record. [rec. pg. 444 (defense counsel acknowledging that there was one black on petitioner's jury), 203 (trial court noting that there was one black on the jury), 445 and 1032 (State acknowledging that juror Bobby Charles, a black male, was seated on the jury)].

[7]The State accepted Herman Lafontaine, Sandra Anderson, Angela Greene and Bobby Charles. However, defense counsel struck Mr. Lafontaine, Ms. Anderson and Ms. Greene. [rec. pg. 445, 178, 178 at fn.2, and 305-306]. Accordingly, these black persons were excluded from service on petitioner's jury, not by the State, but by the defendant. Therefore, Mr. Charles was the only black person seated on petitioner's jury. [rec. pg. 445, 1032, 15].

these persons had been removed from service by peremptory challenges exercised by the defense. [rec. pg. 445]. Petitioner's counsel indicated that he did not wish to present an oral *Batson* challenge at that time, but reserved his right to file a written *Batson* motion. The trial court therefore granted defense counsel additional time to submit a written motion outlining his *Batson* challenge. [rec. pg. 444-447].

Trial was set for August 23, 1999. Prior to trial, petitioner's counsel filed a motion for mistrial based on the disputed definition of the felony-murder doctrine given by the State during *voir dire* and accepted by the court. [rec. pg. 107-109, 454-463]. No *Batson* motion was filed by defense counsel. After argument on the motion for mistrial, the prosecutor reminded the court of defense counsel's oral *Batson* challenge following jury selection. The court ruled that the challenge had been waived. However, because defense counsel had indicated that he might assert a *Batson* issue on appeal, the prosecutor requested permission to state his reasons for the exercise of the State's peremptory challenges on the record. [rec. pg. 463-464]. At that point, the court ruled as follows:

> The court: And the court was present during the selection of the jury and challenges that were made, and the court makes a specific finding of fact that the *Batson* challenge is without merit there being no systemic exclusion of jurors for race, color, creed, or for any other reason, and that the jury selection process regarding *Batson* was not -- was not violated.
>
> Prosecutor: The court is satisfied that the State's use of peremptory challenges in this case was, indeed, race neutral?

> The Court: The court finds the *Batson* challenge to be without
> merit. [rec. pg. 464].

In order to protect the record, and after alleged public allegations by defense
counsel that petitioner's conviction "was the product of racial retribution for the killing of
a white victim", on September 2, 1999, the State nevertheless filed its Reasons for
Peremptory Challenges[8] and moved the trial court for a written decision on the
defendant's *Batson* objection. [rec. pg. 177-184].

Thereafter, the trial judge issued a *per curiam* opinion reaffirming his
determination that the State had not exercised any of its peremptory challenges in a
discriminatory manner. [rec. pg. 202-203]. In so finding the court stated as follows:

> One of the State's theories of the case was the "felony
> murder" doctrine. During *voir dire*, it was evident that
> several jurors had difficulty understanding and/or accepting
> the felony murder doctrine. All of the peremptory challenges
> made by the State were made based either upon the juror's
> unwillingness to serve, potential bias, hardship, or reluctance
> to accept and apply the felony murder doctrine as instructed
> by the Court. None of the State's challenges were biased on
> account of race. To the contrary, three black jurors were
> accepted for service on the jury by the State, but were excused
> for unstated reasons by the defendant; and, the State did place
> a black person on the jury when it had available peremptory
> challenges to be used.
>
> Defendant's "*Batson*" challenge is groundless, without merit,
> and denied by the Court....

---

[8]The State relied on the prosecutor's memory and notes taken during the jury selection process because no
transcript of the jury *voir dire* was then available. [rec. pg. 179 at fn. 5].

Although the court did not separately review the reasons given by the State for use of its peremptory challenges on each individual potential black juror, it is evident that the trial court found that the State used each of its peremptory challenges for race-neutral reasons and that petitioner's *Batson* challenge was therefore unfounded. Given the record in this case, the undersigned cannot find that the trial court's determination was in any way erroneous.

The Equal Protection Clause forbids a prosecutor to challenge potential jurors solely on account of their race. *Batson v. Kentucky,* 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Courts address *Batson* claims under the familiar burden-shifting scheme. See *Batson v. Kentucky,* 476 U.S. 79, 96- 98, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *United States v. Fields,* 72 F.3d 1200, 1206 (5th Cir.1996). "The Supreme Court has outlined a three-step process for determining whether peremptory strikes have been applied in a discriminatory manner. First, the claimant must make a *prima facie* showing that the peremptory challenges have been exercised on the basis of race. Second, if this requisite showing has been made, the burden shifts to the party accused of discrimination to articulate race-neutral explanations for the peremptory challenges. Finally, the trial court must determine whether the claimant has carried his burden of proving purposeful discrimination." *United States v. Webster,* 162 F.3d 308, 349 (5th Cir. 1998) citing *United States v. Bentley-Smith,* 2 F.3d 1368, 1373 (5th Cir.1993) and *United States v. Huey,* 76 F.3d 638, 640-41 (5th Cir.1996); See also *Hernandez v. New York,* 500 U.S. 352, 358-59,

111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) citing *Batson,* 476 U.S. at 96-98. The party making the claim of purposeful discrimination bears the ultimate burden of persuasion. *Webster,* 162 F.3d at 349 citing *Bentley-Smith,* 2 F.3d at 1373.

Assuming, *arguendo,* that defense counsel had timely made his *Batson* motion and that he had made a *prima facie* case, the court would have called on the State to provide race-neutral reasons for the use of its peremptory challenges. Although not mandated by the trial court, the State's reasons for the use of its peremptory strikes appears in the record, as does the court's ruling on the ultimate question of intentional discrimination. Accordingly, on the basis of the entire record herein, this court will analyze the second and third *Batson* criteria, pretermitting any analysis of whether a *prima facie* case was presented by defense counsel in the first instance.[9] See *Webster,* 162 F.3d at 349 fn.55 citing *United States v. Forbes,* 816 F.2d 1006, 1010 (5th Cir.1987) (once a trial court has required the state to offer race-neutral explanations, reviewing courts no longer examine whether a *prima facie* case exits) and *Hernandez v. New York,* 500 U.S. 352, 359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality) ("Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the

---

[9]A defendant may establish a *prima facie* case of discrimination solely on the basis of evidence concerning the prosecutor's exercise of peremptory challenges. *Batson,* 476 U.S. at 96. To do so, the defendant must show that he is a member of a cognizable racial group and that the prosecutor exercised peremptory challenges to veniremen of that group. The defendant must also demonstrate that "these facts and any other relevant circumstances raise an inference that the prosecutor used [peremptory challenges] to exclude" the veniremen on account of race. *Id.; accord, United States v. Clemons,* 941 F.2d 321, 323 (5th Cir.1991).

The trial court should consider all relevant circumstances in determining whether the defendant has established a *prima facie* case. The Supreme Court expressed confidence in the ability of trial courts to supervise *voir dire* and determine whether the circumstances create an inference of discrimination. *Batson,* 476 U.S. at 96-97.

ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a *prima facie* showing becomes moot."). This court's analysis as to whether a timely and properly asserted *Batson* challenge would have been meritorious on appeal, then, will rest on (1) the State's articulated race-neutral explanations for the exercise of its challenges and (2) whether Tezeno has demonstrated that those justifications are pre-textual and that the State engaged in purposeful discrimination.

Unless a discriminatory intent is inherent in the government's explanation, the reason offered should be deemed race-neutral. *Webster*, 162 F.3d at 349 citing *Hernandez*, 500 U.S. at 360, 111 S.Ct. 1859 (plurality); *Medellin v. Dretke*, 371 F.3d 270, 279 (5th Cir. 2004) citing *Purkett*, 514 U.S. at 768. The issue is the facial validity of the prosecutor's explanation, not whether the explanation is persuasive or even plausible. *Purkett*, 514 U.S. at 768. "[T]he ultimate inquiry for the judge is not whether counsel's reason is suspect, or weak, or irrational, but whether counsel is telling the truth in his or her assertion that the challenge is not race-biased." *Webster*, 162 F.3d at 349 citing *Bentley-Smith*, 2 F.3d at 1375. The "race-neutral explanation tendered by the proponent need not be persuasive, or even plausible." *Id.* citing *Huey*, 76 F.3d at 641 and *Purkett*, 514 U.S. at 767-68. It simply must be race-neutral and honest. Determining whether counsel tells the truth in offering his reasons turns on in-person credibility assessments, therefore, reviewing courts give "great deference" to the trial court's finding that the prosecutor's explanation was credible, and reverse only on a finding of clear error. *United*

*States v. Bemis,* 88 Fed.Appx. 1, 3 (5th Cir. 2004) citing *United States v. Wallace,* 32 F.3d 921, 925 (5th Cir. 1994); *Webster,* 162 F.3d at 349-350 citing *Huey,* 76 F.3d at 640-41 and *Fields,* 72 F.3d at 1206;.

The State offered race-neutral reasons for excusing each prospective black juror. The State's stated reasons ranged from a fear that certain jurors should not serve due to lack of education, an inability to understand or unwillingness or reluctance to apply the legal concepts applicable in the case, were unwilling to serve on the jury and hence might be hostile to the prosecution which brought the case to court, would suffer hardship if forced to serve as a juror, and/or would be biased against the prosecution because of relatives with criminal records and pending prosecutions. [rec. pg. 177-183]. The trial court accepted and believed these explanations. [rec. pg. 202-203]. Having reviewed the entire record and in light of the legal standard including the deference given the trial court's in-person credibility assessment of the prosecutor's explanations, this court cannot say that the trial court clearly erred in finding the prosecutor's explanations sufficient. The prosecutor's explanations appear facially valid. *Webster, Purkett,* supra.

The undersigned therefore turns to the third step of *Batson,* whether the State engaged in purposeful discrimination when it exercised its peremptory challenges. Petitioner's substantive *Batson* claim has been dismissed by this court as procedurally defaulted. In considering petitioner's ineffective assistance of counsel claim on the merits, the court has reviewed petitioner's memorandum in support of his substantive

*Batson* claim to determine petitioner's argument as to each African-American juror who was excused by the State's use of a peremptory challenge.

Petitioner argues that six of the State's eight peremptory strikes against potential black jurors were racially motivated, namely the State's use of a peremptory strike against Eddie Wheeler, Elnora Semien, Jacqueline Standsbury, Francilia Thomas-Smith, Ollie Greene and Mary Edwards. Petitioner made this same complaint in the Louisiana Third Circuit Court of Appeals on direct appeal. [see rec. pg. 1201-1204]. Accordingly, this court presumes that petitioner does not challenge the State's use of peremptory strikes against two other potential black jurors as racially motivated.[10] The court will therefore examine only the race-neutral reasons advanced by the State for those six jurors identified by petitioner in this court and on direct appeal in the state courts.

_____

[10]These strikes were used against Myra Orbro and Wilfred Bradley. The record reveals that the State had race-neutral reasons for dismissing these jurors. After tentatively accepting Orbro, the State determined that she had incorrectly answered a question posed by the court, to the effect that no one in her family had been convicted of a crime, when in fact her husband had been convicted of two crimes. Therefore, the State used a peremptory challenge to back-strike Ms. Orbro. [rec. pg. 179]. Mr. Bradley was stricken because he stated that he could not sit in judgment of a person accused of a crime because his brother had been recently convicted of a crime. Moreover, he sat in court with his head on the rail of the jury box appearing as if he wanted to go to sleep displaying a total lack of interest in and respect for the proceedings. After the court denied the State's challenge for cause, the State used a peremptory challenge to excuse him. [rec. pg. 180]. The state's reasons for exercising peremptory challenges on these two jurors are similar to reasons recognized by the Fifth Circuit as legitimate race-neutral justifications for use of peremptory strikes. See *United States v. Davis*, 393 F.3d 540, 544 (5th Cir. 2004) (strike for answering question untruthfully by failing to acknowledge that a family member had been convicted of a crime was valid race neutral reason); *United States v. Tolliver*, 61 F.3d 1189 (5th Cir. 1995), vacated on other grounds, *Sterling v. United States*, 516 U.S. 1105 (1996) (potential juror's brother convicted of a criminal offense, another potential juror appeared disinterested; another juror's sister had been arrested for a narcotics charge); *Moore v. Keller Industries*, 948 F.2d 199, 202 (5th Cir. 1991) citing *United States v. Roberts*, 913 F.2d 211 (5th Cir. 1990), *United States v. Melton*, 883 F.2d 336 (5th Cir. 1989) and *United States v. Lance*, 853 F.2d 1177 (5th Cir. 1988) ("disinterested demeanor" and "inattentiveness" valid, race-neutral reasons for peremptory strikes); See generally *United States v. Bentley-Smith*, 2 F.3d 1368, 1374 (5th Cir.1993) (challenges may be based on subjective factors). Thus, even if petitioner had challenged the use of peremptory strikes on these jurors, the challenge would have been meritless.

At the third stage of the inquiry, Tezeno bears the burden of establishing that the State engaged in "purposeful discrimination" based on race. *Webster*, 162 F.3d at 349-350 citing *Purkett*, 514 U.S. at 767, 115 S.Ct. 1769 and *Bentley-Smith*, 2 F.3d at 1373 ("The ultimate burden of persuasion always lies with the party making the claim of purposeful discrimination."). Moreover, Tezeno bears the burden of proving pretext and therefore racial intent. *Moore v. Keller Indust., Inc.*, 948 F.2d 199, 202 (5th Cir. 1991) citing *United States v. Guerra-Marez*, 928 F.2d 665, 673 fn. 9 (5th Cir. 1991). The Fifth Circuit has noted the difficulty of bringing forward direct evidence of discrimination, and hence, the frequent need to rely on rebuttal of the proffered reasons, as well as comparison to similarly situated jurors who were not stricken. *Webster*, 162 F.3d at 350 fn. 56 citing *Bentley-Smith*, 2 F.3d at 1374. The disproportionate exclusion of members of a certain race, while not prohibited in and of itself, may nonetheless serve as evidence that counsel's stated reason is a pretext for racial discrimination. *Moore*, 948 F.2d at 202. However, the fact that a party does not use all available peremptory challenges against blacks "substantially supports the finding of no discrimination." *Moore*, 948 F.2d at 202 citing *United States v. Terrazas-Carrasco*, 861 F.2d 93, 95 (5th Cir. 1988). Moreover, evidence that the government accepted blacks for service and did not exercise peremptory challenges to eliminate blacks eligible to be seated on the jury negates a finding that the government was accepting jurors solely on a racial basis. *United States v. Mixon*, 977 F.2d 921, 923 (5th Cir. 1992); *Bemis*, 88 Fed.Appx. at 3-4. Because the ultimate

determination of discriminatory intent turns on credibility assessments, reviewing courts afford "great deference" to the trial court's finding that the State's use of peremptory challenges was not racially motivated and will reverse only on a showing of clear error.[11] *Moore,* 948 F.2d at 201 citing *Hernandez,* 500 U.S. 352, 366-369 (1991), *United States v. Valley,* 928 F.2d 130 (5th Cir. 1991) citing *United States v. Moreno,* 878 F.2d 817 (5th Cir. 1989); *Webster,*162 F.3d at 350 citing *Bentley-Smith,* 2 F.3d at 1373 and *United States v. Seals,* 987 F.2d 1102, 1109 (5th Cir.1993); *United States v. Davis,* 393 F.3d 540, 544 (5th Cir. 2004).

Tezeno fails to meet this burden. Tezeno offers no direct evidence of purposeful discrimination. To the contrary, petitioner does not point to anything said by the prosecutor during *voir dire* that even hints at discriminatory intent. Nor does petitioner offer any argument that the State did not dismiss prospective white jurors for reasons similar to those reasons given why black jurors were excused. Rather, petitioner argues that the State's use of eight of its nine peremptory strikes against blacks, alone, demonstrates purposeful discrimination against blacks in the selection of petitioner's jury.

---

[11] The undersigned has cited the standard applicable on direct review as opposed to *habeas* review because of the unique procedural posture of this case. Although the *Batson* issue is presented in the context of this *habeas* proceeding, the petitioner's substantive *Batson* claim has been procedurally defaulted and hence precluded from this court's review. This analysis is solely concerned with petitioner's claim that he received ineffective assistance of counsel because counsel failed to properly preserve the issue for direct appeal. That ineffective assistance claim necessarily requires a preliminary, though not definitive, consideration of whether the substantive *Batson* claim would have been meritorious if it had been properly raised in the state courts on direct appeal. See *Hernandez,* 111 S.Ct. at 1870-1872. Thus, the standard applicable on direct appeal is the appropriate standard for this court's inquiry. However, under the *habeas* standard of review, this court is required to afford the trial court's determination great deference. Under § 2254(e)(1) factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, and under (d)(2) a decision based on a factual determination will not be overturned unless the decision was objectively unreasonable in light of the evidence presented in the state court proceeding.

Petitioner additionally argues that the state's proffered reasons for each strike are pretextual. More specifically, petitioner argues that the felony-murder doctrine was not at issue in his case and the state could therefore not rely on the jurors' difficulty in understanding or accepting the doctrine or the prosecutor's perceived reluctance of the stricken jurors to apply this law as instructed by the court. He also argues that the record does not support the prosecutor's assertion that the stricken jurors did not understand, accept or were reluctant to apply the felony-murder doctrine. Petitioner's claims are without merit.

To the extent that petitioner argues that the number of peremptory strikes used by the State against black venirepersons presents statistical evidence of discrimination, without information regarding the racial make-up of the 40 persons in the three panels from which petitioner's petit jury was selected, that contention is unsupported and thus without merit. The Fifth Circuit has held that in the absence of data concerning the racial make-up of the entire jury pool, "[t]he number of strikes used to excuse minority ... jury pool members is irrelevant on its own." *Medellin*, 371 F.3d at 278-279. Indeed, the court noted that "depending on the make-up of the jury pool, such numbers could indicate that State discriminated against Anglos...." *Id.*

Although the State did not specifically refer to the felony-murder doctrine in its closing argument, as the state trial court properly found,[12] the record is clear that the

---

[12]See rec. pg. 202.

felony-murder doctrine was at issue in petitioner's prosecution. The record demonstrates that the victim was shot and killed during the course of a robbery in which Tezeno participated along with co-defendant Kevin Goodley. Goodley testified at trial that Tezeno shot the victim while Goodley was sitting outside the store in his car. [rec. pg. 596]. Tezeno denied shooting the victim and also testified that he was not present at the store during the robbery or the murder. [rec. pg. 761]. Thus, petitioner was prosecuted under alternate second degree murder theories: specific intent murder and the felony-murder doctrine. [See rec. pg. 54, ¶ 1 and 2 (State's Response to Bill of Particulars)]. The fact that in closing, after all of the evidence had been presented, the prosecutor chose not to argue the felony murder doctrine is irrelevant. The State maintained that Tezeno was responsible for second degree murder whether or not petitioner was the triggerman. [See rec. pg. 54, ¶ 1 and 2 (State's Response to Bill of Particulars); rec. pg. 350-352, 387, 434, 444 (*voir dire* objections and arguments regarding defense counsel's disagreement with the definition of the felony-murder doctrine given by the State); rec. pg. 107-109, 454-463 (Motion for Mistrial based on the disputed definition of the felony-murder doctrine given by the State and accepted by the court); rec. pg. 459 (prosecutor's argument on the defense Motion for Mistrial noting that "had the state elected, the State could try the defendant for first-degree murder if the State felt that it wanted to prove intent in this case. The State is relieved of proving an intent to kill when proceeding under the felony-murder doctrine. Intent is irrelevant. The State may prove it, but then

again, it doesn't have to..."); rec. pg. 477 (State's opening argument); rec. pg. 830-831 (court's jury instructions)]. Thus, in exercising peremptory challenges, at a time when the State did not know which theory of murder the evidence would favor, the State was justified in being concerned about the jurors' difficulty in understanding or accepting the felony-murder doctrine, as well as the prosecutor's perceived reluctance of these juror's willingness to apply the law as instructed by the court.

The State's proffered reasons for the exercise of its's peremptory challenges as to the prospective trial jurors were as follows. With respect to Mr. Wheeler, the State explained that Wheeler "expressed reluctance to convict someone under the felony-murder doctrine. He indicated the law should require the State to prove intent to kill in a murder case. He also indicated reluctance to convict a person who was just a principal to the crime. He vacillated in answering questions and he seemed unsure of whether he could convict under the felony-murder doctrine." [rec. pg. 180]. Petitioner argues that "although Mr. Wheeler did appear to have some reluctance, the State successfully rehabilitated him so that he could convict based on the felony-murder doctrine." The record demonstrates that Wheeler was indeed reluctant to apply the felony-murder doctrine. Although Wheeler stated that he "probably could" convict somebody of second degree murder if the person was engaged in an armed robbery even though he had no intent to kill, Wheeler never stated that he in fact could convict under the felony-murder doctrine. To the contrary, Wheeler unequivocally stated that he believed that the law should require the State to prove intent to kill in order to convict a person of murder. [rec.

pg. 333]. Moreover, Wheeler expressed his belief that it was not fair to convict a principal to armed robbery of felony-murder. [rec. pg. 341-342]. Under these circumstances, the prosecutor's impression that Wheeler was reluctant to follow the law was in no way implausible or unreasonable.

The State explained its peremptory strike against Elnora Semien as follows: "She had a 4th grade education and appeared to have trouble understanding the legal concepts that applied to the case. Moreover, during questioning by the defendant, she indicated reluctance in applying the felony-murder doctrine." [rec. pg. 180]. On direct appeal, the prosecutor added that Ms. Semien "appeared uncertain and seemed to just follow along with the answers given by the others on the panel. Thus, the State had reservations about Semien's competency to serve...." [rec. pg. 1039]. Petitioner does not challenge the State's assertion regarding Ms. Semien's level of education or the prosecutor's perception of her competency to serve. Rather, he argues on the basis of the cold record that she had no difficulty understanding the legal concepts applicable to the case. Review of the *voir dire* transcript reveals that Ms. Semien did indeed seem to follow along with the responses given by the other prospective jurors, rather than sharing her independent thoughts on the questions asked of her. [see rec. pgs. 387-394]. Moreover, during questioning by defense counsel, Semien indicated both that a principal to an armed robbery should not be responsible for murder committed or intended by an accomplice

and also that a principal should share the same degree of responsibility.[13] [rec. pg. 399]. This exchange highlights the State's claim that Semien did indeed demonstrate difficulty understanding the legal concepts applicable to the case, as well as her hesitancy to apply the felony-murder doctrine to a principal in the underlying offense. Finally, as the State notes, Ms. Semien did indeed have only a fourth grade education and her response of "I'm disability" to a simple background question suggests her potential inability to comprehend more complex issues. [rec. pg. 364]. Under the circumstances, the undersigned cannot find that the prosecutor's motivation for exercising a peremptory strike to excuse Ms. Semien was racially motivated. The prosecutor's perception of Ms. Semien's competency does not appear to be unfounded or unreasonable.

With respect to Jacqueline Stansbury, the State explains that "[s]he had a doctor's appointment in Baton Rouge on August 24, one of the two days reserved for the presentation of evidence, and she stated that she could not miss or reschedule this appointment. It was clear to the State that although she was unemployed and, thus, had no significant responsibilities, she did not want to perform her civil duty and serve on a jury. The State believed that a juror who is forced to serve against his or her will is likely to be hostile towards one of the parties, usually the party who brings the case to court, that is,

---

[13]Defense counsel asked, "Ms. Semien, do you think that everybody [principal and shooter] is – should be charged and convicted of the same degree of the crime, of the culpability of the crime?" The record erroneously attributes Semien's response to Jacqueline Standsbury who had already negatively responded to defense counsel's question. [see rec. pg. 398]. Defense counsel addressed Semien by name and without any correction, and it is clear that it is Semien who responded as follows: "I don't think they should be – they should be all the same." When defense counsel then asked, "All the same?" Semien reaffirmed her initial response stating "No." [rec. pg. 399].

the prosecution in a criminal case. Moreover, during questioning by the defendant, she indicated reluctance in applying the felony-murder doctrine." [rec. pg. 180-181]. Petitioner argues that "most venire members usually do try to get out of jury duty - one way or another." Petitioner additionally argues that "it is impossible to tell to which party he or she would be hostile." However, the issue is not whether one could verifiably demonstrate who a reluctant juror would be hostile towards, but rather the State's perception of hostility, which under the circumstances, does not appear to be unfounded or unreasonable. Finally, the record unequivocally demonstrates that Ms. Standsbury would have required the State to prove the identity of the shooter as opposed to merely proving participation in the underlying felony in order to convict for murder. [rec. pg. 393]. When questioned by defense counsel, Ms. Standsbury stated that she did not believe that a principal to armed robbery should be held responsible for murder. [rec. pg. 398]. At a minimum, these passages clearly demonstrate Ms. Standsbury's reluctance to properly apply the felony-murder doctrine to a principal in the underlying felony offense.

The State asserts that Ms. Francilia Thomas-Smith "stated that she had a problem with judging others accused of a crime. Moreover, during questioning by the defendant, she indicated reluctance in applying the felony-murder doctrine." [rec. pg. 181]. Petitioner concedes that the State's claim that Ms. Thomas-Smith did not want to sit as a juror is correct. Nevertheless, petitioner contends that the remainder of the State's claims are false. During voir dire, Ms. Thomas-Smith stated that, "I don't feel that I should sit in

judgment of anybody. I don't feel that it is right. Any – it could be anything, I mean, because I don't believe that we should be the judge...." [rec. pg. 393]. This statement unequivocally supports the State's claim that Ms. Thomas-Smith had a problem with judging others, the essential duty of a juror. Moreover, when questioned by defense counsel, Ms. Thomas-Smith clearly indicated that she did not believe that each participant in an underlying felony offense is equally guilty of murder. [rec. pg. 397]. This passage clearly supports the State's claim that it used a peremptory strike to excuse Ms. Thomas-Smith due to her reluctance to properly apply the felony-murder doctrine.

      The State explained that it used a peremptory strike to excuse Ms. Ollie Greene because "[s]he stated that because she is an elementary school teacher and the first week of school coincided with trial days, it would cause her serious problems if she had to serve. She stated that if she were forced to serve, she would worry about what was going on with her class. Moreover, during questioning by the defendant, she indicated reluctance in applying the felony-murder doctrine." [rec. pg. 181]. Petitioner contends that "every juror is concerned about what they will miss at work while compelled to serve on a jury...." However, the state's concern that a potential juror will be hostile to the state because the state brings the case is reasonable, as set out above. With respect to the State's claim that Ms. Greene indicated a reluctance in applying the felony-murder doctrine, like Ms. Semien, Ms. Standsbury and Ms. Thomas-Smith, when questioned by defense counsel, Ms. Greene indicated that she did not believe that a principal to armed

robbery should be held responsible for murder, thus demonstrating Ms. Greene's reluctance to properly apply the felony-murder doctrine to a principal in the underlying felony offense. [rec. pg. 400].

The State explained that it struck Ms. Mary Edwards for the following reasons: "[S]he stated that her nephew, Jason Edwards, is currently in jail waiting to stand trial for second degree murder. In fact, the Edwards trial is scheduled for December 1999 in this division of the 27th Judicial District Court. The State also notes that Edwards was a cohort of convicted gang leader Martin Texada and he was convicted for a violent jail break involving Texada and Jerome Thomas. Moreover, during questioning by the defendant, she indicated reluctance in applying the felony-murder doctrine." Petitioner does not question the fact that Edwards' nephew was awaiting trial on murder charges at the time of petitioner's jury selection. Rather, he challenges only the State's alternate justification, reluctance in applying the felony-murder doctrine. Like Ms. Semien, Ms. Standsbury, Ms. Thomas-Smith, and Ms. Greene, when questioned by defense counsel, Ms. Edwards indicated that she did not believe that a principal to armed robbery should be held responsible for murder. Thus, her reluctance to properly apply the felony-murder doctrine to a principal in the underlying felony offense is apparent. [rec. pg. 401]. The court also notes that the State peremptorily struck a similarly situated white venireperson, Micheal Quebedeaux, whose nephew had just been convicted of murder, despite his

assurances that he could convict a person of murder under the felony-murder doctrine. [rec. pg. 406, 417-418, 425-426].

Moreover, there is ample evidence in the record before this court which supports a finding that the State was not exercising peremptory strikes based on race. The State peremptorily struck Panel B black venirepersons Semien, Standsbury, Thomas-Smith, Greene and Edwards, all of whom indicated that they did not believe that a principal to armed robbery should be held responsible for murder. [rec. pg. 397-401]. However, the State did not strike other Panel B black venirepersons, namely Sandra Anderson and Angela Greene, both of whom indicated that they believed that all principals to a felony should be held equally responsible for a resulting murder. [rec. pg. 397-398, 400]. Rather, these two potential jurors would have been seated on petitioner's petit jury had they not been peremptorily stricken by the defense. [rec. pg. 305, 445, 178, 178 at fn. 2]. This evidence undercuts petitioner's claim that the State's use of peremptory challenges was racially motivated, suggesting just the opposite, that is, that the State struck potential jurors not on the basis of their race, but rather on the basis of their beliefs and attitudes about the validity of the law applicable to petitioner's case. Moreover, the State did not use all of its available peremptory challenges to strike all blacks from service on petitioner's jury. To the contrary, the State accepted a total of four blacks for service on petitioner's jury, three of which were peremptorily struck by the defense.[14] Moreover, the

_____

[14]See fn. 7, supra.

State did not exercise a peremptory challenge to eliminate, Bobby Charles, a black male who sat on petitioner's jury.[15] [rec. pg. 444, 445, 203, 1032, 15]. These facts "substantially support[] [a] finding of no discrimination" and "negate[] a finding that the [State] was accepting jurors solely on a racial basis. *Moore*, 948 F.2d at 202 citing *Terrazas-Carrasco*, 861 F.2d at 95; *Mixon*, 977 F.2d at 923; *Bemis*, 88 Fed.Appx. at 3-4.

The state trial court did not find the proffered reasons pretextual and found no other evidence of purposeful discrimination. On the record before this court, the undersigned cannot say that the state court clearly erred. Contrary to petitioner's allegations, the record does not support a finding that the prosecutor's explanation for the use of peremptory challenges on the six challenged jurors was merely a pretext for racial discrimination.

Finally, the undersigned notes that the reasons given by the State for use of its peremptory challenges are similar to reasons that the Fifth Circuit has accepted as legitimate race-neutral reasons for peremptorily striking potential jurors. See *United States v. Hinojosa,* 958 F.2d 624, 632 (5th Cir.1992) (prosecutor's belief that a juror would have trouble understanding the complexities of the case); *Wilson v. Cockrell,* 70 Fed.Appx. 219, 226 (5th Cir. 2003) (prosecutor's belief that juror lacked sufficient understanding of the murder trial process including the concept of lesser-included offenses, burden of proof and the defendant's right not to testify at trial); *United States v.*

---

[15]See fn. 6, supra.

*Stedman,* 69 F.3d 737, 739 (5th Cir.1995) (inability to concentrate on case due to outside concerns); *United States v. Tolliver,* 61 F.3d 1189 (5th Cir. 1995), vacated on other grounds, *Sterling v. United States,* 516 U.S. 1105 (1996) (potential juror's brother convicted of a criminal offense, another potential juror appeared disinterested; another juror's sister had been arrested for a narcotics charge); *United States v. Jackson,* 50 F.3d 1335, 1341 (5th Cir.1995) (prosecutor believed that potential juror gave hostile look to prosecutor); *United States v. Mixon,* 977 F.2d 921, 923 (5th Cir.1992) (potential juror appeared to prosecutor to express animosity toward prosecution); See also *United States v. Bentley-Smith,* 2 F.3d 1368, 1374 (5th Cir.1993) (challenges may be based on subjective factors).

In sum, the state trial court found no evidence of purposeful discrimination. The prosecutor had verifiable and legitimate race-neutral explanations for excluding the challenged potential jurors. In light of the above discussion, any of the prosecutor's reasons could reasonably have been accepted by the trial court as evidence of the prosecutor's sincerity. On the record before this court, the undersigned cannot say that the state court clearly erred in finding no racial intent or purposeful discrimination in the State's use of peremptory challenges during selection of petitioner's petit jury.

Because petitioner's claim of discrimination in the State's use of peremptory strikes is without merit, petitioner's claim of ineffective assistance of counsel is likewise without merit. *Medellin v. Dretke,* 371 F.3d 270, 279 (5th Cir. 2004) (finding an

ineffective assistance of counsel claim meritless because the underlying *Batson* claim was

meritless). Counsel are not constitutionally required to make unmeritorious *Batson*

challenges, nor are counsel constitutionally required to make frivolous objections or

assert futile motions. *Clark v. Collins*, 19 F.3d 959, 965-966 (5th Cir. 1994); *Proctor v.

Butler*, 831 F.2d 1251, 1255-1256 (5th Cir. 1987); *Preston*, 209 F.3d at 785 citing *Green*,

160 F.3d at 1037; *Johnson*, 306 F.3d at 255 citing *Koch*, 907 F.2d at 527. Petitioner has

therefore failed to demonstrate that his counsel was deficient or that his performance fell

below an objective level of reasonableness. Moreover, because petitioner's *Batson* claim

would probably have been unsuccessful on direct appeal, petitioner has not demonstrated

that he suffered any actual prejudice as a result of counsel's alleged inactions.

## CONCLUSION

Petitioner's claim that his counsel was ineffective for failing to timely raise and

properly preserve a *Batson* challenge is barred by the doctrine of procedural default.

Additionally, even if the claim could be considered on the merits, it would fail.

Accordingly, petitioner is not entitled to federal *habeas corpus* relief. Petitioner's

remaining ineffective assistance of counsel claim will therefore be denied and dismissed

with prejudice.

Signed at Lafayette, Louisiana on July 2 8, 2005.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE